United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS A. VENTURA, <br><br> Plaintiff, <br><br> v. <br><br> IQVIA INC., et al., <br><br> Defendants. | Case No. 25-cv-09163-RS <br><br> **ORDER GRANTING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT** |

## I. INTRODUCTION

This is pro se Plaintiff Nicholas Ventura's third complaint and Defendants second time moving to dismiss. EVERSANA Life Science Services ("EVERSANA"), IQVIA, Inc. ("IQVIA"), ZS Associates, Inc. ("ZS Associates") and Arthur D. Little, LLC ("ADL") (collectively, "Defendants") are all companies who have declined to hire Plaintiff over the last several years. Plaintiff brings claims for harassment, discrimination, fraudulent and unfair business practices, intentional infliction of emotional distress ("IIED"), tortious interference with prospective economic relations ("IPER"), and misappropriation of confidential information. Plaintiff's second amended complaint ("SAC") continues to suffer from the same deficiencies as before regarding Plaintiff's recurring claims and new deficiencies regarding Plaintiff's new IPER and misappropriation claims as set out below. Accordingly, the motions are granted without leave to amend.[1]

---

[1] Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument,

## II. BACKGROUND

The factual and procedural record was set out in this Court's prior order, Dkt. 73, which dismissed all claims in Plaintiff's first amended complaint ("FAC") against all Defendants. The record has not changed substantially. Accordingly, we do not repeat them here.

Following the Court's prior order, Plaintiff filed a SAC on January 24, 2026. The SAC asserts claims against EVERSANA, IQVIA, and ZS Associates for harassment and discrimination under the California Fair Employment and Housing Act ("FEHA"), Govt. Code § 12940(j); against all Defendants for fraudulent and unfair business practices under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, IIED, and IPER; and, against ADL, misappropriation of trade secrets under the California Trade Secret Act ("CUTSA"), Cal. Civ. Code § 3426, *et seq.* Defendants each filed a motion to dismiss on February 9, 2026. Plaintiff opposed each Defendant's motion to dismiss except for EVERSANA's.

## III. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief, Fed. R. Civ. P. 8(a), and "giv[ing] the defendant fair notice of what the… claim is and the grounds upon which it rests," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (internal quotation marks and citation omitted).

When evaluating such a motion, courts "accept all factual allegations in the complaint as

---

and the hearing set for March 26, 2026 is vacated.

true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, a court is not bound to accept legal conclusions couched as factual allegations as true. *Twombly*, 500 U.S. at 555. Where a complaint is brought by pro se plaintiffs, the court is obligated to evaluate the claims liberally. *See Hebbe v. Pillar*, 627 F.3d 338, 342 (9th Cir. 2010). When the "plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.' " *Zucco Partners LLC v. Digimarc Corp.,* 552 F.3d 981, 1007 (9th Cir.2009) (quoting *In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1097–98 (9th Cir.2002)).

## IV. DISCUSSION

### A. Claims Regarding Harassing, Discriminatory, Unfair, or Extreme and Outrageous Conduct

The legal standards for harassment and discrimination under FEHA have not changed since this Court's prior order. *See* Dkt. 73. To summarize, under FEHA, it is unlawful for an employer to harass or discriminate against an applicant because of protected status. Cal. Gov't Code § 12940(j); Cal. Govt. Code, § 12940(a). Harassment requires "a 'concerted pattern of harassment of a repeated, routine or a generalized nature,' " *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013) (quoting *Aguilar v. Avis Rent A Car Sys., Inc.,* 21 Cal.4th 121, 87 Cal.Rptr.2d 132, 980 P.2d 846, 851 (1999)), that falls "outside the scope of necessary job performance," *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th. 55, 63 (1996), and "commonly necessary personnel management actions such as hiring and firing," *Reno v. Baird*, 18 Cal. 4th 640, 646–47 (1998) (citations omitted). Rarely, "official employment actions" will constitute harassment where they "communicat[e] a hostile message" and are so "severe or pervasive as to alter the working conditions." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 708–9 (2009), *as modified* (Feb. 10, 2010). (citations omitted). Discrimination against an applicant requires "refus[al] to hire or employ" despite a showing of the applicant's qualification and some other circumstance suggesting discriminatory motive. *See* Cal. Govt. Code, § 12940(a); *Guz*, 24 Cal. 4th

ORDER GRANTING MTDS
CASE NO. 25-cv-09163-RS

United States District Court
Northern District of California

at 355; *See Ambat v. City & Cnty. of S.F., 757 F.3d 1017*, 1023 n.2 (9th Cir. 2014) ("FEHA is interpreted consistently with Title VII."). *See also Guz v. Bechtel Nat'l Inc.*, 8 P.3d 1089, 1113 (Cal. 2000).

A claim under the unfair prong of the UCL requires a business practice that "violates established public policy or [that] is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1473 (2006) (quoting *Mass. Mut. Life Ins. Co. v. Superior Court,* 97 Cal.App.4th 1282, 1298–90, 119 Cal.Rptr.2d 190 (2002)). IIED requires, among other elements, "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Light v. Dep't of Parks & Recreation*, 14 Cal. App. 5th 75, 101 (2017). Critically, to qualify as "outrageous," the conduct must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (citations omitted).

As before, Plaintiff's factual allegations do not establish the conduct they must because, beyond conclusory allegations, he does not establish that the interview processes and Defendants' decisions not to hire him were anything nefarious or even abnormal. "[A]brupt rejection with either no explanation or conclusory statements providing no actionable feedback," slow interview scheduling, schedule changes, and failure to follow-up with, i.e., "ghosting, " a candidate, even when the candidate is "re-solicited" by the company within years or months, do not amount to a harassment, hostility, discrimination, business practices that are against public policy or immoral, or extreme and outrageous conduct. SAC ¶ 18 (allegations seemingly as to all Defendants); *id.* ¶¶ 20–2, 24–25 (IQVIA); *id.* ¶ 27–29 (ZS Associates); *id.* ¶ 31–33 (EVERSANA); *id.* ¶ 36–37 (ADL). Unfortunately, these practices are common parts of the job search and hiring process in many industries. Moreover, Plaintiff offers no factual allegations to support the errant conclusory assertion that this treatment was unique to his candidacy or a coordinated effort by Defendants, who Plaintiff admits are "direct competitors". *See id.* ¶¶ 16, 30.

Plaintiff also makes the general assertions that he "is Latino" and firms in the "life sciences

ORDER GRANTING MTDS
CASE NO. 25-cv-09163-RS

consulting industry… employ workforces that are disproportionately Caucasian and Asian-American." *Id.* ¶ 39. However, underrepresentation combined with not uncommon lack of transparency or efficiency in the hiring process does not amount to harassment, discrimination, unfair business practices, or extreme and outrageous conduct.

Plaintiff makes a handful of more specific allegations, but they too are insufficient. Being asked to repeat an identical case study is not evidence of hostility but in fact common practice. *Id.* ¶ 30. Nor does the single, alleged comment by an IQVIA recruiter that "Plaintiff perceived as taunting about his new family." *Id.* ¶ 26. Plaintiff admits this comment alone does not "constitute[] actionable harassment," but he believes it is part of a "pattern of conduct, that, taken cumulatively… created a hostile environment and severe emotional distress." *Id.* However, one comment combined with conclusory allegations does not sufficiently allege a pattern of hostility. Similarly, the single, alleged comment by an EVERSANA interviewer about Defendant "seem[ing] more like an engagement person" does not, without more, establish harassment, discrimination, unfair business practices, or extreme and outrageous conduct, especially when the role for which Defendant was interviewing when the comment was allegedly made was "*Engagement* Manager." *Id.* ¶ 33.

In sum, Plaintiff does not establish he was treated improperly in ways amounting to harassment or discrimination under FEHA, unfair business practices under the UCL, or IIED. Accordingly, these claims fail.

### B. Fraudulent Business Practice

A claim under the fraudulent prong of the UCL requires establishing that a business made a representation that has the likely effect of misleading or deceiving the public. *McKell*, 142 Cal.App.4th at 1471. These claims are also subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009): a plaintiff must plead the circumstances of the alleged fraud with particularity, including the "who, what, when, where, and how" of the misconduct charged, *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Here, Plaintiff asserts that Defendants engaged with Plaintiff as a job candidate "with no genuine intent to hire," SAC, ¶ 28, but fails to include any factual allegations supporting this. As discussed, failure to follow up with a candidate is, unfortunately, common practice and not indicative of a lack of intent to hire. Moreover, Plaintiff does not allege any specific misrepresentation let alone with the required who, what, when, where, or how. Accordingly, his UCL fraud claim fails.

### C. IPER

Under California law, an IPER claim requires (1) an economic relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts, apart from the interference itself, by defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of defendant. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153–54 (2003). In addition to these elements, this state-law tort "requires a plaintiff to allege an act that is wrongful independent of the interference itself." *CRST Van Expedited, Inc. v. Werner Enter., Inc.*, 479 F.3d 1099, 110 (9th Cir. 2007) (citation omitted). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Id. at 1109 (citation and internal quotation marks omitted).

Here, Plaintiff fails to establish an economic relationship: "a job applicant with merely a speculative expectation that a potentially beneficial relationship will arise" with a potential future employer is not sufficient. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 852 (9th Cir. 2004) (internal quotations marks and citations omitted). Plaintiff also fails to show any independently wrongful act. Accordingly, his IPER claim fails.

### D. Misappropriation of Confidential Information

Plaintiff alleges, for the first time, a claim for misappropriation of trade secrets. To succeed on a claim under CUTSA, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or

threatened damage to the plaintiff. *See* 18 U.S.C. § 1839(5); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (DTSA and CUTSA claims are analyzed together with substantially similar elements). A "trade secret" is (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret. *See id.* §§ 1839(3), (5). "[D]escriptions matching Plaintiff's project experiences that had been disclosed during [an ADL] screening interview, including specific language regarding 'market access' methodologies and 'proposals working group' leadership," SAC, ¶ 37, that Plaintiff *voluntarily* disclosed do not constitute trade secrets. Moreover, there is no evidence Plaintiff was harmed. Accordingly, Plaintiff's CUTSA claim fails.

### V. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted as to all claims without leave to amend.

**IT IS SO ORDERED**.

Dated:  March 19, 2026

_____

RICHARD SEEBORG

Chief United States District Judge